# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC d/b/a MACMILLAN LEARNING, CENGAGE LEARNING, INC., ELSEVIER INC., MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, and PEARSON EDUCATION, INC., | **Civil Action No.** |
| Plaintiffs, | **COMPLAINT AND** |
| v. | **DEMAND FOR JURY TRIAL** |
| DOES 1 - 30 d/b/a ACESMALLS.COM, ACETXT.COM, AONSKY.COM, BESTBOOKZ.MYSHOPIFY.COM, BOOKFREELY.COM, BOOKSLITE.COM, COLLEGESCLASS.COM, DIGITTEXTBOOK.COM, DURANBOOK.COM, EBOOKAIR.COM, EBOOKBROS.COM, EBOOKDUCK.COM, EBOOKHUNTERS.COM, EBOOKMORE.COM, EBOOKOUR.COM, EBOOKSEC.COM, ELIBCENTER.COM, ELIBCLASS.COM, ETEXTBOOKO.COM, ETEXTWORLD.COM, GLOOMALL.COM, GREATBUYSMARKET.NET, INSTANT-READING.COM, LIBRASTYLES.COM, LIGHTSTUDENT.COM, MEGATEXT4U.COM, NOVEBAY.COM, PANTHEREBOOK.COM, TIMPLAZA.COM, and W3EBOOK.COM, | |
| Defendants. | |

Plaintiffs Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning, Cengage Learning, Inc., Elsevier Inc., McGraw-Hill Global Education Holdings, LLC, and Pearson Education, Inc. (collectively, "Plaintiffs") for their Complaint against Defendants Does 1-30 d/b/a acesmalls.com, acetxt.com, aonsky.com, bestbookz.myshopify.com, bookfreely.com,

bookslite.com, collegesclass.com, digittextbook.com, duranbook.com, ebookair.com, ebookbros.com, ebookduck.com, ebookhunters.com, ebookmore.com, ebookour.com, ebooksec.com, elibcenter.com, elibclass.com, etextbooko.com, etextworld.com, gloomall.com, greatbuysmarket.net, instant-reading.com, librastyles.com, lightstudent.com, megatext4u.com, novebay.com, pantherebook.com, timplaza.com, and w3ebook.com ("Defendants"), allege, on personal knowledge as to matters relating to themselves and on information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.     Plaintiffs are among the largest providers of higher-education textbooks and tailored learning solutions in the United States.  In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions providing quality content and assessment material in physical, digital, and multi-media formats.

2.     Defendants operate wholly illegal online bookstores selling pirated copies of Plaintiffs' copyrighted textbooks ("Infringing eBooks").  Defendants rely on a Google advertising program called Google Shopping to offer consumers searching for Plaintiffs' textbooks inexpensive and illegitimate copies of those textbooks.  Defendants' paid advertising for their Infringing eBooks are displayed prominently at the top of Google search results and lure consumers away from legitimate sources of textbooks.

3.     Hiding behind the anonymity of the internet, Defendants sell the Infringing eBooks to consumers in the United States.  Defendants' infringing activity steals the fruits of Plaintiffs' and their authors' creative efforts and monetary investments.  Accordingly, Plaintiffs bring this suit for injunctive relief and damages to put an end to Defendants' knowing and willful copyright infringement.

## PARTIES

4.      Plaintiff Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning") is a New York limited liability company wholly owned by Macmillan Holdings, LLC, with its principal place of business at One New York Plaza, New York, New York 10004.

5.      Plaintiff Cengage Learning Inc., formerly Thomson Learning Inc., ("Cengage") is a Delaware corporation, with its principal place of business 200 Pier Four Boulevard, Boston, Massachusetts 02210, as well as an office located in Clifton Park, New York.

6.      Plaintiff Elsevier Inc. ("Elsevier") is a Delaware corporation, with its principal place of business at 230 Park Avenue, Suite 800, New York, NY 10169.

7.      Plaintiff McGraw-Hill Global Education Holdings, LLC ("MHE") is a Delaware limited liability company, with its principal place of business at 2 Penn Plaza, New York, New York 10121.

8.      Plaintiff Pearson Education, Inc. ("Pearson") is a Delaware corporation, with its principal place of business at 221 River Street, Hoboken, New Jersey 07030, as well as offices located in New York State.

9.      Defendants Does 1-30 are fictitious names for certain individuals or entities whose true identities and locations are not currently known to Plaintiffs.  Defendants engage in an illegal scheme whereby, as alleged herein, they sell Infringing eBooks to the public, making and distributing unauthorized copies of Plaintiffs' copyrighted works via websites located at, *inter alia*, www.acesmalls.com,   www.acetxt.com,   www.aonsky.com,   www.bestbookz.myshopify.com, www.bookfreely.com,  www.bookslite.com,  www.collegesclass.com,  www.digittextbook.com, www.duranbook.com,    www.ebookair.com,    www.ebookbros.com,    www.ebookduck.com, www.ebookhunters.com,   www.ebookmore.com,   www.ebookour.com    www.ebooksec.com,

www.elibcenter.com,     www.elibclass.com,     www.etextbooko.com,     www.etextworld.com,
www.gloomall.com, www.greatbuysmarket.net, www.instant-reading.com, www.librastyles.com,
www.lightstudent.com,   www.megatext4u.com,   www.novebay.com,   www.pantherebook.com,
www.timplaza.com, and www.w3ebook.com (the "Infringing Sites" or "Sites").   Once Plaintiffs
obtain information as to Defendants' true identities, Plaintiffs will amend the Complaint to include
such individuals or entities as named defendants.

### JURISDICTION AND VENUE

10.     This is an action arising under the Copyright Act, 17 U.S.C. § 101, *et seq*.  As such,
the Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a).

11.     The Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. §
302 because Defendants transact business in New York and committed tortious acts within and/or
causing injury to Plaintiffs in New York, and Plaintiffs' claims arise from those activities.   In
particular, Defendants (a) transact business in New York by offering to sell and selling Infringing
eBooks to consumers in New York via the internet, (b) have committed acts of copyright
infringement in New York and in this District, and/or (c) have committed acts of copyright
infringement outside New York causing injury to Plaintiffs in New York, and Defendants expected
or should reasonably have expected such acts to have consequences in New York, and Defendants
derive substantial revenue from interstate or international commerce.  In addition, Defendants sell
Infringing eBooks through highly interactive websites, which are continuously accessible to,
target, sell, and deliver goods to consumers in New York.  In the alternative, the Court has personal
jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k).

12.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because
Defendants conduct, transact, and/or solicit business in this District.

## FACTUAL ALLEGATIONS

A.       **Plaintiffs' Textbook Businesses**

13.     Plaintiffs are among the largest providers of textbooks and tailored learning solutions in the United States.  In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions, providing quality content and assessment material in physical, digital, and multi-media formats.  Plaintiffs' publications include physical and digital textbooks, as well as online textbooks (collectively, "Textbooks").  These Textbooks are widely available in the United States marketplace to consumers for a fee.  Plaintiffs' products are sold throughout the United States, through direct sales channels and via legitimate distributors and stores.

14.     Plaintiffs publish their works under many imprints, or brands, that are well known and highly respected.  For example, Macmillan Learning's imprints include Bedford/St. Martin's, W.H. Freeman & Company, and Worth Publishers; Cengage's imprints include Brooks Cole, Delmar, Heinle, and South-Western Educational Publishing; Elsevier's imprints include Academic Press, Butterworth Heinemann, Mosby, and Saunders; MHE's imprints include Irwin, Lange, and McGraw-Hill Higher Education; and Pearson's imprints include Addison Wesley, Allyn & Bacon, and Benjamin Cummings.  These are just some of Plaintiffs' many valuable and recognizable imprints.  **Exhibit A** includes a complete list of Plaintiffs' imprints for purposes of their claims against Defendants (the "Imprints").

15.     Plaintiffs invest significant time and money into publishing their Textbooks.  For example, Plaintiffs devote a tremendous amount of resources annually in the creation, support, advertisement, and promotion of their products in the United States.  Plaintiffs (and/or their predecessors) have also invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs and their Textbooks.

16.     Plaintiffs suffer serious significant injury when their copyrights are infringed.  Both publishers and authors alike are deprived of income when their textbooks are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.  A substantial decline in revenue from sales or rentals of Plaintiffs' copyrighted works could cause Plaintiffs to cease publishing one or more deserving Textbooks.  This would adversely impact the creation of new textbooks, scholarly endeavor, as well as the availability and quality of educational content in the humanities, sciences, and social sciences.

17.     Plaintiffs are the copyright owners of, and/or the owners of exclusive rights under copyright in, among many others, the works, or derivative works, described on **Exhibit B** (the "Authentic Works").  Plaintiffs have obtained copyright registrations, duly issued by the United States Copyright Office, covering their respective Authentic Works.

**B.      Defendants' Piracy and the Infringing Sites**

18.     Textbook piracy is rampant, particularly as a result of the ease by which pirates around the world can sell their infringing textbooks to U.S. consumers using well-known and popular service providers and payment processors.  Despite Plaintiffs' and other publishers' use of Digital Rights Management or other digital security ("DRM") to protect authorized electronic versions of their copyrighted content, pirates are adept at circumventing those protections.  Accordingly, pirated textbooks are easily copied and distributed in .pdf or other electronic format throughout the lucrative U.S. market.

19.     Defendants own, control, and operate the Infringing Sites, which Defendants have used and/or continue to use in furtherance of the unlawful conduct alleged herein.  Through the Infringing Sites, Defendants engage in and profit from the sale of unauthorized digital copies of

books, including Plaintiffs' Textbooks.  Attached as Exhibit B is a list of the Authentic Works, a non-exhaustive, representative list of Plaintiffs' Textbooks that Defendants have reproduced and/or distributed in violation of Plaintiffs' copyrights.

20.     The apparent sole object of Defendants' Infringing Sites is to make money from infringement.  Defendants are not authorized to reproduce or distribute digital copies of Plaintiffs' Textbooks.  Nonetheless, Defendants have reproduced and, through their highly interactive websites, distributed unauthorized copies of Plaintiffs' Authentic Works to the public in violation of Plaintiffs' copyrights.

21.     Purchasers or prospective purchasers can search for listings of the unauthorized digital copies of Plaintiffs' Textbooks available on Defendants' Sites.  Purchasers can interact with the Sites, communicate with Defendants, and complete their transaction.  Purchasers can search by keyword, such as by title, subject, and/or International Standard Book Number (ISBN) via the search function available on many of the Sites.  For the remaining Sites, purchasers can use Google to search the Site for a particular title they seek to buy.  At the touch of a few keystrokes, armed with a credit card or other means of online payment, a purchaser can download unauthorized copies of Plaintiffs' and other publishers' copyrighted publications.

22.     Defendants reproduce Plaintiffs' Textbooks without authorization and then store the Infringing eBooks, which are full, unauthorized digital copies, on computers or servers Defendants own or control.  In many cases, this is accomplished through the use of third-party cloud storage providers, such as Dropbox, Google Drive, and Sync.com.  All of Defendants' Sites advertise that they deliver digital copies of the Infringing eBooks instantly and most, if not all, advertise that the files delivered are compatible with any e-reader, tablet, or similar device.  Thus, shortly, if not immediately, after Defendants receive payment, Defendants send an email or other

confirmation from which the purchaser can download the pirated e-book.

23.     Defendants' Sites have individual "product pages" for the Infringing eBooks that they sell.  On these pages, a visitor can click on a button to purchase and then obtain an Infringing eBook with little to no delay.  These pages usually, if not always, contain an image of the legitimate book's cover and advertise key features of the infringing material, such as the ability to search, copy, or print text.  Making matters worse, Defendants often use marketing copy from Plaintiffs' own websites to promote the sale of their Infringing eBooks.  By way of example, the image below is a screenshot of a product page on the Infringing Site located at www.elibcenter.com, which offers an infringing digital copy of Plaintiff Pearson's copyrighted work, *Foundations of Addictions Counseling*, 4th edition:



24.     For purposes of comparison, below is a screenshot from the product page for *Foundations of Additions Counseling* on Pearson's own website:



25.     Defendants hide behind the anonymity of the internet and the Infringing Sites. None of the Sites themselves reveal any indication of who the individuals are that are operating the Sites.  Consumers and prospective consumers are given generic email addresses as contacts. Some of the Infringing Sites identify physical addresses that are either fictitious (e.g., using 123-456 as the building number) or do not appear to identify the operator's actual physical location. By way of example, addresses listed on the Infringing Sites include a co-working space, multi-unit

office buildings, and a vacuum store.  Two Sites, located at www.etextbooko.com and www.ebookour.com, falsely identify the physical address of a large, national book distributor in Tennessee as their physical location.  Etextbooko.com also falsely identifies an additional address in Fresno, California using the wrong zip code.

26.     While online pirates such as Defendants are notorious for, and adept at, hiding their identities and locations, including switching their service providers to avoid being shut down, Defendants currently utilize the services of a number of companies in the United States in connection with their infringing activities.  In particular, Defendants obtain hosting and domain name registration services from various U.S.-based providers.  Defendants also use U.S.-based payment processors, such as PayPal and Stripe to process payments for the Infringing eBooks.

27.     Defendants use multiple email addresses for purposes of operating their Infringing Sites.  All of the Infringing Sites include an email address on the Site so that consumers or prospective consumers can contact Defendants.  In addition, Defendants use the same or additional email addresses for purposes of receiving payment via PayPal or Stripe and/or to deliver the Infringing eBooks.

28.     Many of the Infringing Sites appear to be related to each other and/or operated by the same individual or group of individuals.  While pirates often use inaccurate or fictitious contact information to register and operate their websites, may of the Sites list identical or nearly identical contact information—be it fictitious or not.  For example, the Infringing Sites located at www.instant-reading.com and www.megatext4u.com both list the same address in Middleburg, Florida on their websites.  Likewise, the Infringing Sites located at www.ebookduck.com and www.w3ebook.com list the same address on Sunset Lake Road in Newark, Delaware in different areas of their websites.  In addition, several of the Infringing Sites are identical or nearly identical

in appearance, such as those located at www.acesmalls.com, www.aonsky.com, www.collegesclass.com, www.librastyles.com, and www.lightstudent.com.  The Infringing Sites located at www.ebooksec.com, www.librastyles.com, and www.aonsky.com employ nearly identical pop-ups highlighting recent purchases made on the Sites (including the book title and the buyer's first name and city).  Moreover, in certain areas of the Sites located at www.acesmalls.com and www.lightstudent.com visitors are redirected to the Site located www.librastyles.com.

29.     Plaintiffs have made purchases of infringing copies of Plaintiffs' Authentic Works from the Infringing Sites.  Such purchases confirm that, as Defendants advertise, they provide consumers with complete (unauthorized) digital copies of Plaintiffs' Textbooks.  Many, if not all, of the files Defendants distribute on the Infringing Sites contain the copyright page contained in the Authentic Works, and some include a copyright notice on each and every page of the .pdf file.  For example, Plaintiffs received an unauthorized copy of Cengage's copyrighted Textbook, *Principles of Macroeconomics,* 8th edition from the Infringing Site located at www.duranbook.com.  The .pdf file contains the copyright page, as well as a copyright notice on each page of the file.  Immediately following the copyright notice on each page, there is a proprietary code, which indicates that the Infringing eBook was created from a hacked file that was intended and authorized solely for distribution through Amazon's Kindle service.

### C.     Defendants Use Google Shopping to Drive Traffic to Their Infringing Sites

30.     Defendants utilize the Google Shopping service to drive traffic to the Infringing Sites and increase their illicit profits.  The Infringing Sites' illegal activity violates Google's policy against the use of its services to facilitate the unauthorized distribution of copyrighted content.  Nevertheless, the Infringing Sites use Google Shopping to unfairly compete with Plaintiffs and legitimate distributors, displacing sales of genuine Textbooks .

31.     Google Shopping advertisements (formerly known as Product Listing Ads or "PLAs") are purchased through an auction process called the "ad auction," in which website operators bid on ads.  The bid amount, in combination with other factors, determine the order in which ads appear (or the prominence of ads) on a Google results page for any given search. Accordingly, Plaintiffs, as well as legitimate distributors, that purchase Google Shopping ads for the Textbooks compete with advertisements for Defendants' Infringing Sites and the Infringing eBooks.  Plaintiffs and/or their legitimate distributors pay more than they would without this competition or are relegated to lower prominence and lose potential buyers enticed to click through to Defendants' Infringing Sites.

32.     Because Defendants use Google Shopping, their paid advertisements for the Infringing Sites often appear at the top of search results on Google.com.   Their paid advertisements, which include an image of the infringing book that is being offered, are very often given prominence.  For example, by typing "The Art of Public Speaking ebook" in the search field at Google.com, several ads appear at the top before the search results.  The image below is a screenshot of the search results on Google.com.  The five thumbnail images at the top of the page are Google Shopping results.  The first image on the left is an advertisement for the Infringing Site located at www.digittextbook.com; the second from the left is for the Infringing Site located at www.bestbookz.myshopify.com; the third from the left is for the Infringing Site located at www.etextworld.com; the fourth is for a legitimate distributor, VitalSource; and the fifth is for an eBay seller, benrki-0, in Morocco.  All but VitalSource are advertising unauthorized copies of MHE's copyrighted work, *The Art of Public Speaking*, for sale at a fraction of the legitimate work's cost.  The Digittextbook and Bestbookz Sites offer the 12th edition of *The Art of Public Speaking* for less than $10, which Bestbookz advertises is a 90% discount.



33.    Moreover, the Infringing Sites' sponsored links to pirated copies of Plaintiffs'

Textbooks appear in prominent positions above or in close proximity to legitimate sources of

authentic product.  For example, in the screenshot above, the search result for MHE's own website

is on the same page, albeit close to the bottom (if a consumer makes it that far).   But, to

unsuspecting individual consumers, the listings all appear to be for legitimate copies of MHE's

textbook because they are listed with an image of the textbook's cover.  The consumer then is left

to select the book they want to purchase, which all too often is based solely or largely on the price offered.

34.     Similar results occur when searching on Google for Cengage's work, *Principles of Macroeconomics*, 8th edition.   In the screenshot below, Google Shopping ads prominently displayed above search results direct consumers looking for Cengage's textbook to the Infringing Sites located at www.digittextbook.com, www.elibclass.com, www.pantherebook.com, and www.lightstudent.com:



35.     Likewise, when a user clicks on the Google Shopping results tab, the user is

presented with multiple websites where they can purchase *Principles of Macroeconomics*.   The

first page alone includes Shopping ads for the Infringing Sites located at www.digittextbook.com,

www.pantherebook.com,   www.lightstudent.com,   www.gloomall.com,   www.timplaza.com,

www.duranbooks.com, www.acesmalls.com, and www.elibclass.com.   A portion of the first page

of the Google Shopping results is captured in the screenshots below:







36.     The Infringing Sites are offering to sell the current (8th) edition of *Principles of Macroeconomics* for between $14.99 and $29.99.   This is a fraction of the retail price for a legitimate copy of the Textbook.

**D.     Defendants Willfully Engage in Piracy**

37.     Defendants' Sites receive thousands of unique visitors per month from consumers and prospective consumers located throughout the United States, including this District, as well as abroad.  Several of the Infringing Sites advertise in pop-up windows that appear on the Sites that they have sold their Infringing eBooks to consumers in New York (and elsewhere in the United States).  Indeed, a very substantial portion of the visitors to Defendants' Sites are located in the United States.  One report for www.acetxt.com indicates that there were over 340,000 visits to this Site in the six months prior to October 2019 and 68% of such web traffic came from visitors within the United States.

38.     Defendants are well aware of the enormous scope of their infringing activity. Defendants knowingly and intentionally designed, built, and operate businesses devoted to selling pirated copies of Plaintiffs' and other publishers' copyrighted works.  Defendants have done so, and continue to do so, with the full awareness that they have not been granted any license to copy, distribute, or sell digital copies of Plaintiffs' Textbooks.  Defendants have harmed Plaintiffs in this District and are aware that they have caused Plaintiffs to suffer harm in this District.

39.     Defendants have gone so far as to create innocuous online "storefronts" to hide the illegal products they sell from the casual visitor.  For example, the home page of the Infringing Site located at www.timplaza.com misleadingly implies that the Site sells ballet shoes and other random goods.  In addition, the Site's catalog of Infringing eBooks is not apparent.  However, by searching on Google, for example for "timplaza" and Elsevier's *White and Pharoah's Oral*

*Radiology: Principles and Interpretation*, 8th edition*, a user can locate in the search results a direct link to the Site's product page, which offers the textbook for sale in .pdf format for $16.99. Similarly, the home page of the Infringing Site located at www.elibclass.com advertises goods such as a ceiling light, sofa, and book covers.  However, by searching on Google for "elibclass" and Macmillan Learning's textbook, *Introduction to the Practice of Statistics*, a user can find at the top of the search results page, a Google advertisement for Elibclass.com, which provides a link to the Site's product page offering the 9th edition of the textbook in .pdf format for $29.99.

40.     In another egregious example of Defendants' willful infringement, the cover image on BooksLite.com for an unauthorized copy of Cengage's *Mathematical Statistics with Applications*, 7th edition, clearly states that the Infringing eBook being sold has been "De-DRMed," meaning that the DRM protection that Cengage employed to restrict unauthorized copying or distribution has been removed.  Moreover, BooksLite.com advertises on each product page for its Infringing eBooks: "Unlimited Access: There is no restriction on using our e-book, you can download and store it everywhere, use it anytime on any device."

41.     Defendants actively continue to expand their illegal business, including by adding "new arrivals" to the Infringing Sites, which, of course, represent nothing more than additional infringements.  They do so while conducting their business solely by email and over the internet, making concerted efforts to conceal their true names and physical locations.  Defendants have attempted to conceal their identity and frustrate attempts to stop their unlawful activity, including by not putting any real names or physical addresses on Defendants' Sites.  Instead, Defendants provide fake U.S.-based addresses to give consumers the false impression that they operate from legitimate locations in the United States.

42.     Defendants also use multiple domain names and already have moved certain of

their Infringing Sites to new domain names in the few weeks prior to the filing of this suit, even while maintaining the same content.  For example, Plaintiffs had identified a Site located at www.izoneteam.com, which moved to www.jeanteams.com and was identical to www.timplaza.com, but neither izoneteam.com, nor jeanteams.com appear to be operational any longer.  Similarly, Plaintiffs identified an Infringing Site located at www.bellescent.myshopify.com, which now redirects visitors to a new Infringing Site located at www.bookfreely.com.  The Infringing Site located at www.elibraryforclass.com now operates at www.elibclass.com.  Similarly, the Infringing Site located at www.elibrarycenter.com now operates at www.elibcenter.com Defendants' apparent purpose is to avoid interruption of their illegal business should any of their Sites be shut down.

43.    Defendants' reproduction and distribution of Plaintiffs' valuable copyrighted works take place without authorization and without compensation to Plaintiffs, their authors, and others in the legitimate chain of commerce.  On the contrary, Defendants' actions described herein benefit them alone, for their own commercial purpose and gain.  As a result of Defendants' actions, entire pirated copies of Plaintiffs' Textbooks are reproduced and distributed with no DRM or digital security in place that might prevent their viral downstream dissemination.  Defendants' flagrant piracy steals the fruits of Plaintiffs' and their authors' creative efforts and severely harms Plaintiffs' ability to sell their Textbooks.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement (17 U.S.C. § 101 *et seq.*)

44.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

45.    Plaintiffs' Authentic Works listed on Exhibit B constitute original works and

copyrightable subject matter pursuant to the Copyright Act and are the subject of United States Certificates of Copyright Registration duly obtained from the United States Copyright Office.  At all relevant times, Plaintiffs have been and still are the owners or exclusive licensees of all rights, title, and interest in and to their respective copyrights in such works, which have never been assigned, licensed, or otherwise transferred to Defendants.

46.     Beginning on an unknown date but at least since June 2019, Defendants, without the permission of Plaintiffs, have reproduced the Authentic Works and distributed (and continue to distribute) to the public unauthorized copies of the Authentic Works.  Such reproduction and distribution constitute infringement of Plaintiffs' exclusive rights under copyright pursuant to 17 U.S.C. § 501 in violation of 17 U.S.C. §§ 106(1) and 106(3).

47.     The infringement of Plaintiffs' rights in each of their respective copyrighted works constitutes a separate and distinct act of infringement.

48.     Defendants' unlawful conduct, as set forth above, was willful.  Defendants had actual and/or constructive knowledge that their conduct was unlawful and in violation of Plaintiffs' copyrights.  Defendants acted intentionally and in reckless disregard of Plaintiffs' copyrights.

49.     As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

50.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.     Judgment on the claim set forth above, including that Defendants' infringement of Plaintiffs' Authentic Works was intentional and willful.

2.     Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

3.     An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Infringing eBooks with documents relating to all such purchases and sales;

4.     An order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

5.     An order enjoining Defendants and those in active concert with them from further infringing upon Plaintiffs' respective copyrights pursuant to 17 U.S.C. § 502;

6.     An order requiring Defendants to deliver up for destruction all infringing copies and other material bearing imitations, including confusingly similar variations, of Plaintiffs' Authentic Works pursuant to 17 U.S.C. § 503;

7.     An order seizing the domain names associated with Defendants' Infringing Sites and turning them over to Plaintiffs;

8.     Prejudgment and post-judgment interest at the applicable rate;

9.     Plaintiffs' attorney's fees, expenses, and costs of suit; and

10.     Such other and further relief the Court deems proper.

## JURY TRIAL DEMAND

Plaintiffs hereby request a trial by jury.

DATED:  November 13, 2019

Respectfully submitted,

By: _____
Matthew J. Oppenheim
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue NW, Fifth Floor
Washington, DC 20016
Tel:  (202) 480-2999
Fax:  (866) 766-1678
matt@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*