**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC d/b/a MACMILLAN LEARNING, CENGAGE LEARNING, INC., ELSEVIER INC., MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, and PEARSON EDUCATION, INC., | **Civil Action No. 19-CV-10524-LAK** |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | **DEMAND FOR JURY** |
| TRUNG KIEN NGUYEN, DUY ANH NGUYEN, DUONG THI BAY, XUAN CHINH NGUYEN, TUAN ANH NGUYEN, VINH NGOC NGUYEN, LE TRANG, VAN QUYNH PHAM, THI LIEN PHUONG NGUYEN, VAN TUAN DANG, HIEN VO VAN, QUANG NGUYEN, VU NGUYEN KHANG, GINGER BOTTORFF, SHERRY FLOYD, JESSICA GOLDBERG, MAXIM GUBCEAC, KELLI LANE, TRACEY LUM, RODNEY MOUZONE, ZAINEE JALLAL, BIN LI, PAN PAN CAO, MICHAEL MCEVILLEY, ION SOBOL, ANTHONY TORRESI, HASEEB ANJUM, WALESKA CAMACHO, ANJUM AKHTER, SUSAN RAGON, ALIFF SYUKRI HAMDAN, KIM HAI LONG, KHUYEN NGUYEN, ERIKA DEMETEROVA, ROSTISLAV ZHURAVSKIY, STEFAN DEMETER, SHAHBAZ HAIDER, VALENTINA RODRIGUEZ, and CHANTELLE MELENDEZ, | **TRIAL** |
| Defendants. | |

Plaintiffs Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning,

Cengage Learning, Inc., Elsevier Inc., McGraw Hill LLC, formerly McGraw-Hill Global

Education Holdings, LLC,[1] and Pearson Education, Inc. (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file their First Amended Complaint against the Defendants identified below and on **Exhibit A**[2] hereto. Defendants operate infringing online bookstores ("Infringing Sites" or "Sites") selling electronic, pirated copies of Plaintiffs' copyrighted textbooks ("Infringing eBooks"). Plaintiffs previously filed their original Complaint in this action against 30 unnamed Doe defendants. Following expedited discovery pursuant to the Court's November 14, 2019 Order, Plaintiffs now file this First Amended Complaint to name the Defendants, including their legal names and aliases, and further identify the Infringing Sites. Plaintiffs allege as follows on personal knowledge as to matters relating to themselves and on information and belief as to all other matters:

## NATURE OF THE CASE

1.      Plaintiffs are among the largest providers of higher-education textbooks and tailored learning solutions in the United States. In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions providing quality content and assessment material in physical, digital, and multi-media formats.

---

[1] On January 1, 2020, McGraw Hill LLC became the successor in interest to McGraw-Hill Global Education Holdings, LLC.

[2] Attached as Exhibit A is a table listing the Defendants' names, aliases, networks (*see* explanation *infra*), email addresses, and Infringing Sites. "Infringing Sites" includes those websites named in the original Complaint and additional websites revealed in discovery that Defendants own and/or operate ("Associated Sites"). Some of the Associated Sites have been down and inactive since Plaintiffs received the third parties' discovery responses identifying them. Although not determinative, if Plaintiffs have not been able to view the website and the domain name suggests that it sold non-book items, Plaintiffs have not included such website on Exhibit A. For active websites that Plaintiffs have been able to view, Plaintiffs have included them as Associated Sites on Exhibit A only if they sell unauthorized copies of Plaintiffs' copyrighted works.

2.      Without any authorization or license to do so, Defendants willfully reproduce Plaintiffs' eBooks, sell, and distribute them to customers throughout the United States (and elsewhere), including in New York.

3.      Defendants rely on Google advertising services to offer consumers searching for Plaintiffs' textbooks inexpensive and illegitimate copies of those textbooks. Defendants' paid advertisements for their Infringing eBooks are displayed prominently at the top of Google search results and lure consumers away from legitimate sources of textbooks.

4.      Hiding behind the anonymity of the internet, Defendants sell the Infringing eBooks through their Infringing Sites, without revealing, and in many cases actively concealing, their true identities.

5.      On November 14, 2019 and December 10, 2019, respectively, the Court issued a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") enjoining Defendants from continued operation of the Infringing Sites, among other infringing conduct. Nevertheless, many Defendants have ignored the TRO and PI and continued to sell Infringing eBooks in blatant violation of Plaintiffs' copyrights and the Court's orders.

6.      Despite being served with the original Complaint and other papers in this case pursuant to the Court's November 14, 2019 Alternative Service Order, no Defendant has entered an appearance in this litigation.

7.      Through discovery, Plaintiffs have identified the Defendants named herein and further identified piracy networks through which certain of the Defendants operate. These networks are assigned "Group" numbers below and on the accompanying exhibits. Plaintiffs have identified these networks through common contact and financial account information produced by payment processors, banks, web hosts, domain registrars, and Google ("Intermediaries") with

respect to Defendants and/or the Infringing Sites, as well as, in some cases, the information contained on the Infringing Sites themselves.

8.      Defendants' infringing activity causes financial and irreparable harm to Plaintiffs and steals the fruits of Plaintiffs' and their authors' creative efforts and monetary investments. Plaintiffs bring this action for damages and injunctive relief to put an end to Defendants' willful copyright infringement.

**PARTIES**

**<u>The Plaintiff Publishers</u>**

9.      Plaintiff Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning") is a New York limited liability company wholly owned by Macmillan Holdings, LLC, with its principal place of business at One New York Plaza, New York, New York 10004.

10.      Plaintiff Cengage Learning Inc., formerly Thomson Learning Inc. ("Cengage"), is a Delaware corporation, with its principal place of business at 200 Pier Four Boulevard, Boston, Massachusetts 02210, as well as an office located in Clifton Park, New York.

11.      Plaintiff Elsevier Inc. ("Elsevier") is a Delaware corporation, with its principal place of business at 230 Park Avenue, Suite 800, New York, New York 10169.

12.      Plaintiff McGraw Hill LLC ("McGraw Hill"), the successor in interest to McGraw-Hill Global Education Holdings, LLC, is a Delaware limited liability company, with its principal place of business at 1325 Avenue of the Americas, 12th Floor, New York, New York 10019.

13.     Plaintiff Pearson Education, Inc. ("Pearson") is a Delaware corporation, with its principal place of business at 221 River Street, Hoboken, New Jersey 07030, as well as offices located in New York State.

## The Defendants

### The Group 1 Defendants

14.     The following Infringing Sites are operated and/or have been operated by a group of Defendants who form an extensive international piracy ring and, collectively, are referred to herein as "the Group 1 Defendants": 1) acesmalls.com, 2) aonsky.com, 3) bookfreely.com, 4) collegesclass.com, 5) ebookair.com, 6) ebookbros.com, 7) ebookduck.com, 8) ebookmore.com, 9) ebookour.com, 10) ebooksec.com, 11) etextooko.com, 12) etextworld.com, 13) gloomall.com, 14) greatbuysmarket.net, 15) librastyles.com, 16) lightstudent.com, 17) novebay.com, 18) timplaza.com, and 19) w3ebook.com (collectively, "the Group 1 Defendant Sites"). In addition to these Sites, the Group 1 Defendants operate and/or have operated the numerous Associated Sites listed in connection with the Group 1 Defendants on Exhibit A. The Group 1 Defendants, collectively, are formerly known in this case as Does 1, 3, 5, 7, 10, 11, 12, 14, 15, 16, 19, 20, 21, 22, 24, 25, 27, 29, and 30.

15.     The Group 1 Defendants, in varying combinations, have acted in conjunction with each other to operate their infringing business and the Group 1 Defendant Sites. The Group 1 Defendants include the thirteen individuals identified below who reside in Vietnam, as well as additional individuals who reside in the United States and Canada.

16.     Trung Kien Nguyen a/k/a Trung Nguyen Kei, Nguyen Trung Kien, Nguyen Trung Nguyen ("Defendant Trung Kien Nguyen") is a Group 1 Defendant and an individual who resides in Vietnam.

17.      Duy Anh Nguyen a/k/a Nguyen Duy Anh ("Defendant Duy Anh Nguyen") is a Group 1 Defendant and an individual who resides in Vietnam.

18.      Duong Thi Bay a/k/a Bay Duong Thi ("Defendant Bay") is a Group 1 Defendant and an individual who resides in Vietnam.

19.      Xuan Chinh Nguyen a/k/a Nguyen Xuan Chinh, Chinh Nguyen, and Chinh Xuan Nguyen ("Defendant Xuan Chinh Nguyen") is a Group 1 Defendant and an individual who resides in Vietnam.

20.      Tuan Anh Nguyen a/k/a Nguyen Tuan Anh ("Defendant Tuan Anh Nguyen") is a Group 1 Defendant and an individual who resides in Vietnam.

21.      Vinh Ngoc Nguyen a/k/a Nguyen Ngoc Vinh ("Defendant Vinh Ngoc Nguyen") is a Group 1 Defendant and an individual who resides in Vietnam.

22.      Lê Trang a/k/a Le Yen Trang ("Defendant Trang") is a Group 1 Defendant and an individual who resides in Vietnam.

23.      Van Quynh Pham ("Defendant Pham") is a Group 1 Defendant and an individual who resides in Vietnam.

24.      Thi Lien Phuong Nguyen a/k/a Kevin Corbett, Kevin Corbrett, Maria Miller, Kristen Harper, GSA Zoklipmen, Bill Spear, Lorgan Steven, Vu Steven, Nori Mora, Charles Binau, and Nguyen Thi Lien Phuong ("Defendant Thi Nguyen") is a Group 1 Defendant and an individual who resides in Vietnam.

25.      Van Tuan Dang a/k/a Tuan Van Dang and Dang Van Tuan ("Defendant Dang") is a Group 1 Defendant and an individual who resides in Vietnam.

26.      Hien Vo Van a/k/a Vo Van Hien ("Defendant Van") is a Group 1 Defendant and an individual who resides in Vietnam.

27.     Quang Nguyen ("Defendant Quang Nguyen") is a Group 1 Defendant and an individual who resides in Vietnam.

28.     Vu Nguyen Khang a/k/a Nguyen Vu Quang and Khang Vu ("Defendant Khang") is a Group 1 Defendant and individual who resides in Vietnam.

29.     Ginger Bottorff ("Defendant Bottorff") is a Group 1 Defendant and an individual who resides in Tempe, Arizona.

30.     Sherry Floyd a/k/a Sherry Eiginger ("Defendant Floyd") is a Group 1 Defendant and an individual who resides in Gilbert, South Carolina.

31.     Jessica Goldberg a/k/a Chloe Chandler, Anthony Goldman, Daniel Riley, Jennifer Collee, Chloe Sanchez, Susan James, Jane Watson, Susan Watson, Susan Reynolds, Mohsin Ali Mir, Naazneen Mohsin, Anjum Nuruddin, and Chin Nguyen ("Defendant Goldberg") is a Group 1 Defendant and an individual who resides in Canada.

32.     Maxim Gubceac ("Defendant Gubceac") is a Group 1 Defendant and an individual who resides in Canada.

33.     Kelli Lane a/k/a Cupcakes Merritt, Nam Do, Do Hong Nam, Direct Concept Ltd., Diana Rau, Chuantee Ong, Michael Rau, Nanci Nette, and Seth W Wilkof, and d/b/a PLS Parasol ("Defendant Lane") is a Group 1 Defendant and an individual who resides in Merritt Island, Florida.

34.     Tracey Lum a/k/a Truong Duy Khuong, Tamiondrea, Cornel Berdilo, Thi Thanh Thuy Tran, Van Tai Do, Margarita Popa, Andrew Cossar, Le Si Thong, Bui Minh Trang, Iulian Popa, Shopbooknow, Faris Khoury, Tuan Pham Van, Vu Thi Tinh, Katheryn Roach, Carol Phillip, Ginger Masters,   Janet Kang,   Zakaria Channiff,   Zakaria Channif,   Iulian   Popa,

and Shopbooknow ("Defendant Lum") is a Group 1 Defendant and an individual who resides in New York, New York.

35. Rodney Mouzone ("Defendant Mouzone") is a Group 1 Defendant and an individual who resides in Middletown, Connecticut.

36. Zainee Jallal a/k/a Nadhir Yushua, Laith Haddad, Ahmad Salihin, and ZJ Collection ("Defendant Jallal"), is a Group 1 Defendant who has provided to Intermediaries multiple addresses in the United States and abroad. Accordingly, Defendant Jallal's actual place of residence is not known to Plaintiffs at this time.

37. The aliases identified above with respect to particular Group 1 Defendants are merely a subset of the over 780 aliases used by the Group 1 Defendants as a whole to conduct their infringing business, as set forth on Exhibit A.

**The Group 2 Defendants**

38. Bin Li a/k/a Bin Lin, Shen Hongjie, David Jones, Bentley Jones, Wei Yang, Changzhou Yu, David M. Savine, and Allen Wong ("Defendant Li") is an individual who, along with Pan Pan Cao (collectively, formerly known as Doe 2 and referred to herein as "the Group 2 Defendants"), operates and/or has operated the Infringing Site acetxt.com, as well as those Associated Sites listed in connection with the Group 2 Defendants on Exhibit A. Defendant Li has provided to Intermediaries multiple addresses in the United States and abroad. Accordingly, Defendant Li's actual place of residence is not known to Plaintiffs at this time.

39. Pan Pan Cao a/k/a 盼盼曹 ("Defendant Cao") is an individual who, along with Defendant Li, operates and/or has operated the Infringing Site acetxt.com, as well as those Associates Sites listed in connection with the Group 2 Defendants on Exhibit A. Defendant Cao resides in China.

**Defendant Michael McEvilley**

40.     Michael McEvilley a/k/a Michael MkEvilley, Mike McEvilley, Muhammad Nizar Saiddin, and Adam Haris Hamzah ("Defendant McEvilley"), formerly known as Doe 4, is an individual who operates and/or has operated the Infringing Site bestbookz.myshopify.com, as well as those Associated Sites listed in connection with Defendant McEvilley on Exhibit A. Defendant McEvilley resides in Los Angeles, California.

**Defendant Ion Sobol**

41.     Ion Sobol a/k/a Booksed ("Defendant Sobol"), formerly known as Doe 6, is an individual who operates and/or has operated the Infringing Site bookslite.com, as well as the Associated Sites listed in connection with Defendant Sobol on Exhibit A. Based on information included on this Infringing Site, Defendant Sobol is located in the Netherlands.

**Defendant Anthony Torresi**

42.     Anthony Torresi a/k/a Farud and Tony Torresi ("Defendant Torresi"), formerly known as Doe 8, is an individual who operates and/or has operated the Infringing Site digittextbook.com, as well as those Associated Sites listed in connection with Defendant Torresi on Exhibit A. Defendant Torresi resides in Miami, Florida.

**The Group 3 Defendants**

43.     Haseeb Anjum a/k/a Adam Bristow, Sundus Farrukh, and Priscilla Santoya ("Defendant Anjum") is an individual who, along with Defendants Waleska Camacho, Anjum Akhter, and Susan Ragon (collectively, formerly known as Doe 9 and referred to herein as "the Group 3 Defendants"), operates and/or has operated the Infringing Site duranbook.com, as well as those Associated Sites listed in connection with the Group 3 Defendants on Exhibit A. Defendant Anjum resides in Pakistan.

44.     Waleska Camacho ("Defendant Camacho") is an individual who, along with the other Group 3 Defendants, operates and/or has operated the Infringing Site duranbook.com, as well as those Associated Sites listed in connection with the Group 3 Defendants on Exhibit A.  Defendant Camacho resides in Manchester, New Hampshire.

45.     Anjum Akhter ("Defendant Akhter") is an individual who, along with the other Group 3 Defendants, operates and/or has operated the Infringing Site duranbook.com, as well as those Associated Sites listed in connection with the Group 3 Defendants on Exhibit A. Defendant Akhter resides in Pakistan.

46.     Susan Ragon ("Defendant Ragon") is an individual who, along with the other Group 3 Defendants, operates and/or has operating the Infringing Site duranbook.com, as well as those Associated Sites listed in connection with the Group 3 Defendants on Exhibit A. Defendant Ragon resides in Hempstead, New York.

**Defendant Aliff Syukri Hamdan**

47.     Aliff Syukri Hamdan a/k/a Amcouture, Brian Williams, Nazrin Orlando, Kristen Middleton, K.L. Middleton, Shannon Webster, and Imran Alias ("Defendant Hamdan"), formerly known as Doe 13, is an individual who operates and/or has operated the Infringing Site ebookhunters.com. Defendant Hamdan has provided addresses in Canada and Malaysia to third parties whose services he is using to conduct his infringing business. Accordingly, Defendant Hamdan's actual place of residence is not known to Plaintiffs at this time.

**The Group 4 Defendants**

48.     Kim Hai Long a/k/a Hai Long Kim and Long Kim ("Defendant Long") is an individual who, along with Khuyen Nguyen (collectively, formerly known as Does 17 and 18 and referred to herein as "the Group 4 Defendants"), operates and/or has operated the Infringing Sites

elibcenter.com and elibclass.com, as well as those Associated Sites listed in connection with the Group 4 Defendants on Exhibit A. Defendant Long resides in Vietnam.

49.     Khuyen Nguyen a/k/a Le Thi My Loan and My Loan Le Thi ("Defendant Khuyen Nguyen") is an individual who, along with Defendant Long, operates and/or has operated the Infringing Sites elibcenter.com and elibclass.com, as well as those Associated Sites listed in connection with the Group 4 Defendants on Exhibit A. Based on an address provided to a payment processor, Defendant Khuyen Nguyen resides in Los Angeles, California.

**The Group 5 Defendants**

50.     Erika Demeterova a/k/a Erica Demeterova and Sabrina Truesdale ("Defendant Demeterova") is an individual who, along with Defendants Rostislav Zhuravskiy, Stefan Demeter, and Shahbaz Haider (collectively, formerly known as Does 23 and 26 and referred to herein as "the Group 5 Defendants"), operates and/or has operated the Infringing Sites instant-reading.com and megatext4u.com, as well as those Associated Sites listed in connection with the Group 5 Defendants on Exhibit A. Defendant Demeterova resides in the United Kingdom.

51.     Rostislav Zhuravskiy ("Defendant Zhuravskiy") is an individual who, along with the other Group 5 Defendants, operates and/or has operated the Infringing Sites instant-reading.com and megatext4u.com, as well as those Associated Sites listed in connection with the Group 5 Defendants on Exhibit A. Defendant Zhuravskiy resides in Brooklyn, New York.

52.     Stefan Demeter ("Defendant Demeter") is an individual who, along with the other Group 5 Defendants, operates and/or has operated the Infringing Sites instant-reading.com and megatext4u.com, as well as those Associated Sites listed in connection with the Group 5 Defendants on Exhibit A. Defendant Demeter resides in the United Kingdom.

53.     Shahbaz Haider ("Defendant Haider") is an individual who, along with the other Group 5 Defendants, operates and/or has operated the Infringing Sites instant-reading.com and megatext4u.com, as well as those Associated Sites listed in connection with the Group 5 Defendants on Exhibit A. Defendant Haider resides in the United Kingdom.

**The Group 6 Defendants**

54.     Valentina Rodriguez a/k/a Juan Macia ("Defendant Rodriguez") is an individual who, along with Chantelle Melendez ("Defendant Melendez") (collectively, formerly known as Doe 28 and referred to herein as "the Group 6 Defendants") operates and/or has operated the Infringing Site pantherebook.com, as well as those Associated Sites listed in connection with the Group 6 Defendants on Exhibit A.  Defendant Rodriguez resides in Miami, Florida.

55.     Defendant Chantelle Melendez is an individual who, along with Defendant Rodriguez, operates and/or has operated the Infringing Site pantherebook.com, as well as those Associated Sites listed in connection with the Group 6 Defendants on Exhibit A. Defendant Melendez resides in Miami, Florida.

## JURISDICTION AND VENUE

56.     This is an action arising under the Copyright Act, 17 U.S.C. § 101, *et seq*.  As such, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a).

57.     The Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302 because Defendants transact business in New York and committed tortious acts within and/or causing injury to Plaintiffs in New York, and Plaintiffs' claims arise from those activities. In particular, Defendants (a) transact business in New York by offering to sell and selling Infringing eBooks to consumers in New York via the internet, (b) have committed acts of copyright infringement in New York and in this District, and/or (c) have committed acts of

copyright infringement outside New York causing injury to Plaintiffs in New York; Defendants expected or should reasonably have expected such acts to have consequences in New York; and Defendants derive substantial revenue from interstate or international commerce. In addition, Defendants sell Infringing eBooks through highly interactive websites, which are continuously accessible to, target, sell, and deliver goods to consumers in New York. In the alternative, the Court has personal jurisdiction over some of the Defendants under Federal Rule of Civil Procedure 4(k).

58.     The Court also has general personal jurisdiction over Defendants Lum, Ragon, and Zhuravskiy under N.Y. C.P.L.R. § 301 because they are domiciled in New York.

59.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because Defendants conduct, transact, and/or solicit business in this District.

## FACTUAL ALLEGATIONS

### A.     <u>Plaintiffs' Textbook Businesses</u>

60.     Plaintiffs are among the largest providers of textbooks and tailored learning solutions in the United States. In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions, providing quality content and assessment material in physical, digital, and multi-media formats. Plaintiffs' publications include physical and digital textbooks, as well as online textbooks. These textbooks are widely available in the United States marketplace to consumers for a fee. Plaintiffs' products are sold throughout the United States, through direct sales channels and via legitimate distributors and stores.

61.     Plaintiffs publish their works under many imprints, or brands, that are well known and highly respected. For example, Macmillan Learning's imprints include Bedford/St. Martin's,

W.H. Freeman & Company, and Worth Publishers; Cengage's imprints include Brooks Cole, Delmar, Heinle, and South-Western Educational Publishing; Elsevier's imprints include Academic Press, Butterworth Heinemann, Mosby, and Saunders; McGraw Hill's imprints include Irwin, Lange, and McGraw-Hill Higher Education; and Pearson's imprints include Addison Wesley, Allyn & Bacon, and Benjamin Cummings. These are just some of Plaintiffs' many valuable and recognizable imprints. **Exhibit B** includes a complete list of Plaintiffs' imprints for purposes of their claims against Defendants (the "Imprints").

62.     Plaintiffs invest significant time and money into publishing their textbooks. For example, Plaintiffs devote a tremendous amount of resources annually in the creation, support, advertisement, and promotion of their products in the United States. Plaintiffs (and/or their predecessors) have also invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs and their textbooks.

63.     Plaintiffs suffer serious significant injury when their copyrights are infringed. Both publishers and authors alike are deprived of income when their textbooks are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work. A substantial decline in revenue from sales or rentals of Plaintiffs' copyrighted works could cause Plaintiffs to cease publishing one or more deserving textbooks. This would adversely impact the creation of new textbooks, scholarly endeavor, as well as the availability and quality of educational content in the humanities, sciences, and social sciences.

64.     Plaintiffs are the copyright owners of, and/or the owners of exclusive rights under copyright in, among many others, the works, or derivative works, described on **Exhibit C** (the "Authentic Works"). Plaintiffs have obtained copyright registrations, duly issued by the United

States Copyright Office, covering their respective Authentic Works. Exhibit C lists, by Defendant and Infringing Site, Authentic Works that Plaintiffs purchased directly from Defendants' Infringing Sites and that Defendants, therefore, unlawfully reproduced and distributed. Exhibit C is a representative and non-exhaustive list of the Authentic Works that Defendants have infringed. Given the blatantly illegal nature of Defendants' conduct and Infringing Sites, and the fact that Defendants have advertised, offered for sale, and sold unauthorized electronic copies of many of Plaintiffs' textbooks beyond those Plaintiffs purchased in order to bring this case, Defendants have infringed copyrighted works owned or exclusively controlled by Plaintiffs beyond those listed on Exhibit A.

**B.**      **Defendants' Piracy and the Infringing Sites**

65.      Textbook piracy is rampant, particularly as a result of the ease by which pirates around the world can sell their infringing textbooks to U.S. consumers using well-known and popular service providers and payment processors. Despite Plaintiffs' and other publishers' use of Digital Rights Management or other digital security ("DRM") to protect authorized electronic versions of their copyrighted content, pirates are adept at circumventing those protections. Accordingly, pirated textbooks are easily copied and distributed in PDF or other electronic format throughout the lucrative U.S. market.

66.      Defendants own, control, and/or operate the Infringing Sites, which Defendants have used and/or continue to use in furtherance of the unlawful conduct alleged herein. Through the Infringing Sites, Defendants engage in and profit from the sale of unauthorized digital copies of books, including Plaintiffs' textbooks.

67.      The objective of Defendants' Infringing Sites is to make money from infringement. Defendants are not authorized to reproduce or distribute digital copies of Plaintiffs'

textbooks. Nonetheless, Defendants have reproduced and, through their highly interactive websites, distributed unauthorized copies of Plaintiffs' Authentic Works, and other works, to the public in violation of Plaintiffs' copyrights.

68.     Purchasers or prospective purchasers can search for listings of the unauthorized digital copies of Plaintiffs' textbooks available on the Sites.  Purchasers can interact with the Sites, communicate with Defendants, and complete their transaction. Purchasers can search by keyword, such as by title, subject, and/or International Standard Book Number (ISBN) via the search function available on many of the Sites.  For the remaining Sites, purchasers can use Google to search the Site for a particular title they seek to buy. At the touch of a few keystrokes, armed with a credit card or other means of online payment, a purchaser can download unauthorized copies of Plaintiffs' and other publishers' copyrighted publications.

69.     Defendants reproduce Plaintiffs' textbooks without authorization and then store the Infringing eBooks, which are full (or in some cases nearly full, as they are missing some content), unauthorized digital copies, on computers or servers Defendants own or control. In many cases, this is accomplished through the use of third-party cloud storage providers, such as Dropbox, Google Drive, and Sync.com. All of Defendants' Sites advertise that they deliver digital copies of the Infringing eBooks instantly and most, if not all, advertise that the files delivered are compatible with any e-reader, tablet, or similar device. Thus, shortly, if not immediately, after Defendants receive payment, Defendants send an email or other confirmation from which the purchaser can download the Infringing eBook.

70.     Defendants' Sites have individual "product pages" for the Infringing eBooks that they sell. On these pages, a visitor can click on a button to purchase an Infringing eBook.  These pages usually, if not always, contain an image of the legitimate book's cover and advertise key features of the infringing material, such as the ability to search, copy, or print text. Making matters

worse, Defendants often use marketing copy from Plaintiffs' own websites to promote the sale of their Infringing eBooks.  By way of example, the image below is a screenshot of a product page on the Infringing Site located at www.elibcenter.com, which offered an infringing digital copy of Plaintiff Pearson's copyrighted work, *Foundations of Addictions Counseling*, 4th edition.



71.     For purposes of comparison, below is a screenshot from the product page for *Foundations of Addictions Counseling* on Pearson's own website:



72.     Defendants hide behind the anonymity of the internet and the Infringing Sites. None of the Sites themselves reveal the names of those who are operating the Sites. Consumers and prospective consumers are given generic email addresses as contacts. Some of the Infringing Sites identify physical addresses that are either fictitious or do not appear to identify the operator's actual physical location. By way of example, two Sites located at www.etextbooko.com and www.ebookour.com falsely identified the physical address of a large, national book distributor in

Tennessee as their physical location. Etextbooko.com then falsely identified an additional address in Fresno, California using the wrong zip code.

73.     While online pirates such as Defendants are notorious for, and adept at, hiding their identities and locations, including switching their service providers to avoid being shut down, Defendants have utilized the services of a number of companies in the United States in connection with their infringing activities. In particular, many Defendants have obtained hosting and domain name registration services from various U.S.-based Intermediaries. Many Defendants have also used U.S.-based payment processors, such as PayPal and Stripe, to process payments for the Infringing eBooks. Defendants then transfer their ill-gotten proceeds to banks in the U.S. and abroad.

74.     Plaintiffs have made purchases of infringing copies of Plaintiffs' Authentic Works from the Infringing Sites. Such purchases confirm that, as Defendants advertise, they provide consumers with digital copies (albeit unauthorized copies) of Plaintiffs' Authentic Works. Many, if not all, of the files Defendants distribute on the Infringing Sites contain the copyright page contained in the Authentic Works, and some include a copyright notice on each and every page of the PDF file. For example, Plaintiffs received an unauthorized copy of Cengage's copyrighted textbook *Principles of Macroeconomics,* 8th edition from the Infringing Site located at www.duranbook.com. The PDF file contains the copyright page, as well as a copyright notice on each page of the file. Further, immediately following the copyright notice on each page, there is a proprietary code, which indicates that the Infringing eBook was created from a hacked file that was intended and authorized solely for distribution through Amazon's Kindle service.

**C.     Defendants' Use of Google Advertising and Merchant Services to Drive Traffic to Their Infringing Sites**

75.     Defendants utilize Google advertising and merchant services to drive traffic to the Infringing Sites and increase their illicit profits. The Infringing Sites' illegal activity violates

Google's policy against the use of its services to facilitate the unauthorized distribution of copyrighted content. Nevertheless, the Infringing Sites use Google advertising to unfairly compete with Plaintiffs and legitimate distributors, displacing sales of genuine textbooks.

76.     Certain Google advertisements are purchased through an auction process called the "ad auction," in which website operators bid on advertisements. The bid amount, in combination with other factors, determines the order in which these advertisements appear (or the prominence of the advertisements) on a Google results page for any given search. Accordingly, Plaintiffs, as well as legitimate distributors, that purchase such Google advertisements for textbooks compete with advertisements for Defendants' Infringing Sites and the Infringing eBooks. Plaintiffs and/or their legitimate distributors pay more than they would without this competition or are relegated to lower prominence and lose potential buyers enticed to click through to Defendants' Infringing Sites.

77.     Defendants' paid advertisements for the Infringing Sites, which include an image of the infringing book that is being offered, are very often given prominence on Google.com. For example, by typing "The Art of Public Speaking ebook" in the search field at Google.com, several ads appear at the top before the search results. The image below is a screenshot of such a search. The five thumbnail images at the top of the page are advertisements on Google's "Shopping" platform. From the left, the first image is an advertisement for the Infringing Site located at www.digittextbook.com; the second is an advertisement for the Infringing Site located at www.bestbookz.myshopify.com; the third is an advertisement for the Infringing Site located at www.etextworld.com; the fourth is an advertisement for a legitimate distributor, VitalSource; and the fifth is an advertisement for an eBay seller, benrki-0, in Morocco. All but VitalSource are advertisements for unauthorized copies of McGraw Hill's copyrighted work, *The Art of Public Speaking*, for sale at a fraction of the legitimate work's cost. The Digittextbook and Bestbookz Sites

21

are shown as offering the 12th edition of *The Art of Public Speaking* for less than $10, which

Bestbookz advertised as a 90% discount.



78.    Moreover, the Infringing Sites' sponsored links to pirated copies of Plaintiffs'

textbooks appear in prominent positions above or in close proximity to legitimate sources of

authentic product.  For example, in the screenshot above, the search result for McGraw Hill's own

website is on the same page, albeit close to the bottom (if a consumer makes it that far). But, to

unsuspecting individual consumers, the listings all appear to be for legitimate copies of McGraw

Hill's textbook because they are listed with an image of the textbook's cover. The consumer then is left to select the book he or she wants to purchase, which all too often is based solely or largely on the price offered.

79.     Similar results occurred when searching on Google for Cengage's work, *Principles of Macroeconomics*, 8th edition. In the screenshot below, Defendants' advertisements on Google, prominently displayed above search results, direct consumers looking for Cengage's textbook to the Infringing Sites located at www.digittextbook.com, www.elibclass.com, www.pantherebook.com, and www.lightstudent.com:



80.    Likewise, clicking on the Google Shopping results tab yielded multiple websites where the consumer can purchase *Principles of Macroeconomics*, including, as shown below, the Infringing Sites located at www.digittextbook.com, www.pantherebook.com, www.lightstudent.com, www.gloomall.com,www.timplaza.com, www.duranbooks.com, www.acesmalls.com, and www.elibclass.com:







81.     In the example above, the Infringing Sites were offering to sell the current (8th) edition of *Principles of Macroeconomics* for between $14.99 and $29.99. This is a fraction of the retail price for a legitimate copy of the textbook.

###     D.     Defendants Willfully Engage in Piracy in this District and Beyond.

82.     Defendants' Sites receive thousands of unique visitors per month from consumers and prospective consumers located throughout the United States, including in this District, as well as abroad. Several of the Infringing Sites advertise in pop-up windows that appear on the Sites that they have sold their Infringing eBooks to consumers in New York (and elsewhere in the United States). Indeed, a very substantial portion of the visitors to Defendants' Sites are located in the United States.  One report for www.acetxt.com indicated that there were over 340,000 visits to this Site in the six months prior to October 2019 and 68% of such web traffic came from visitors within the United States.

83.     Defendants are well aware of the enormous scope of their infringing activity. Defendants knowingly and intentionally designed, built, and operate businesses devoted to selling pirated copies of Plaintiffs' and other publishers' copyrighted works. Defendants have done so, and continue to do so, with the full awareness that they have not been granted any license to copy, distribute, or sell digital copies of Plaintiffs' textbooks.  Defendants have harmed Plaintiffs in this District and are aware that they have caused Plaintiffs to suffer harm in this District.

84.     Some Defendants have gone so far as to create innocuous online "storefronts" to hide the illegal products they sell from the casual visitor. For example, the home page of the Infringing Site located at www.timplaza.com misleadingly implied that the Site sold ballet shoes and other random goods. In addition, the Site's catalog of Infringing eBooks was not apparent. However, by searching on Google, for example for "timplaza" and Elsevier's *White and*

27

*Pharoah's Oral Radiology: Principles and Interpretation*, 8th edition*,* a user could locate in the search results a direct link to the Site's product page, which offered the textbook for sale in PDF format for $16.99. Similarly, the home page of the Infringing Site located at www.elibclass.com advertised goods such as a ceiling light, a sofa, and book covers. However, by searching on Google for "elibclass" and Macmillan Learning's textbook, *Introduction to the Practice of Statistics*, a user could find at the top of the search results page a Google advertisement for elibclass.com, which provided a link to the Site's product page offering the 9th edition of the textbook in PDF format for $29.99.

85.    In another egregious example of Defendants' willful infringement, the cover image on bookslite.com for an unauthorized copy of Cengage's *Mathematical Statistics with Applications*, 7th edition, clearly stated that the Infringing eBook being sold had been "De-DRMed," meaning that the DRM protection that Cengage employed to restrict unauthorized copying or distribution had been removed. Moreover, bookslite.com advertised on each product page for its Infringing eBooks: "Unlimited Access: There is no restriction on using our e-book, you can download and store it everywhere, use it anytime on any device."

86.    Defendants conduct their business principally or solely by email and over the internet, making concerted efforts to conceal their true names and physical locations. Defendants have attempted to conceal their identities and frustrated attempts to stop their unlawful activity, including by not putting real names or physical addresses on the Infringing Sites. Instead, some Defendants have provided fake U.S.-based addresses to give consumers the false impression that they operate from legitimate locations in the United States.

87.    Many Defendants also use multiple domain names to sell Infringing eBooks. Some Defendants moved certain of their Infringing Sites to new domain names in the few weeks

prior to the initial filing of this suit, even while maintaining the same content. For example, Plaintiffs had identified a Site located at www.izoneteam.com, which moved to www.jeanteams.com and was identical to www.timplaza.com, but neither izoneteam.com nor jeanteams.com appeared to be operational at the time Plaintiffs filed the original Complaint.

88.     Following the Court's issuance of the TRO and PI in this action, of which Defendants received actual notice, most Defendants continued to sell Infringing eBooks online in violation of the Court's orders, in many cases adding "new arrivals" to their offerings. These Defendants continued to operate the Infringing Sites that Plaintiffs identified in the original Complaint; continued to operate other Infringing Sites that previously existed, but about which Plaintiffs were not aware when they filed the Complaint; and/or changed domain names or created new Sites in substantially the same form as the Sites identified in the original Complaint because Intermediaries ceased providing Defendants with their services or Defendants changed Intermediaries to evade detection by Plaintiffs.

89.     For instance, Defendants Rodriguez and Melendez have switched domains from www.pantherebook.com, identified in the original Complaint, to the similarly-named bookpanthers.com, panthertextbooks.net, and pantherlibrary.net. In each case, the email used to communicate with customers continues to include "pantherebook.com" in the address. By way of example, the nearly identical home pages of patherebook.com and panthertextbooks.net, respectively, are shown in the first and second images below. As shown in the third image below, Defendants Rodriguez and Melendez, like other Defendants, continue to sell Infringing eBooks, such as Macmillan Learning's *Lehninger Principles of Biochemistry*, 6th edition in this example, at the far below market prices — here, $17.99.







90.     Defendants' reproduction and distribution of Plaintiffs' valuable copyrighted works take place without authorization and without compensation to Plaintiffs, their authors, and others in the legitimate chain of commerce.  On the contrary, Defendants' actions described herein benefit them alone, for their own commercial purpose and gain. As a result of Defendants' actions, entire pirated copies of Plaintiffs' textbooks are reproduced and distributed with no DRM or digital security in place that might prevent their viral downstream dissemination. Defendants' flagrant piracy steals the fruits of Plaintiffs' and their authors' creative efforts and severely harms Plaintiffs' ability to sell their textbooks.

### E.     The Group 1 Defendants

91.     The Group 1 Defendants are prolific infringers.  This piracy ring has sold pirated copies of Plaintiffs' copyrighted works through numerous Infringing Sites — including 19 Sites identified in Plaintiffs' original Complaint, i.e., acesmalls.com, aonsky.com, bookfreely.com,

collegesclass.com, ebookair.com, ebookbros.com, ebookduck.com, ebookmore.com, ebookour.com, ebooksec.com, etextooko.com, etextworld.com, gloomall.com, greatbuysmarket.net, librastyles.com, lightstudent.com, novebay.com, timplaza.com, and w3ebook.com. Plaintiffs have also identified in discovery over 85 Associated Sites linked to the Group 1 Defendants, as listed on Exhibit A.

92.    In operating their infringing business, the Group 1 Defendants each participate in, exercise control over, and/or benefit from their infringing activities. They use names, aliases, email addresses, and/or financial accounts interchangeably to conduct and/or profit from their illegal business.

93.    The Group 1 Defendants have made concerted efforts to conceal their identities and contact information.  For example, in dealing with Intermediaries and/or otherwise operating their infringing business, the Group 1 Defendants collectively have provided over 780 aliases, 900 email addresses, and 360 physical addresses across the United States, including in Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Illinois, Indiana, Iowa, Kentucky, Louisiana, Florida, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, Wisconsin, and Wyoming, and abroad, including in Canada, Germany, the United Kingdom, Ireland, China, Australia, Malaysia, and Vietnam. Moreover, the Group 1 Defendants have used false addresses. For example, one address in Colorado does not appear to exist; one address in Delaware is the address for a kennel club; and one address in Connecticut is the address for an ice cream shop.

94.     Plaintiffs believe that as part of their infringing business, the Group 1 Defendants also use the identities of certain real and/or fictitious persons in the United States to establish financial accounts with payment processors and banks in such persons' names without their permission. The Group 1 Defendants then transfer the ill-gotten proceeds from their infringing sales in and out of these accounts. At this time, discovery into this issue concerning the Group 1 Defendants' infringing business is ongoing.[3]

95.     Despite receiving notice of the TRO and PI, the Group 1 Defendants willfully continued to operate Infringing Sites in violation of the Court's orders. For example, timplaza.com remained active, advertising thousands of pirate eBooks for sale, until at least February 2020. Then, in March 2020, timplaza.com began forwarding users to villeeva.com, which, operating via a foreign web host, also sold Infringing eBooks. Further, the Group 1 Defendant Sites ebookair.com, ebookduck.com, gloomall.com, and w3ebook.com remained active and infringing even after the Court issued the TRO and PI in this case.

96.     In addition, the Group 1 Defendants have continued their infringing sales through at least 13 Infringing Sites that Plaintiffs identified in their Complaint in *Cengage Learning, Inc. et al. v. Doe 1 d/b/a Allebooksvital.com et al.*, Case No. 20-cv-00769-JGK ("the 2020 Litigation")*,* another copyright action Plaintiffs brought in this Court to address the infringing sale of unauthorized electronic copies of their textbooks.[4] Further, the Group 1 Defendants are currently

---

[3] To this end, Plaintiffs have attempted, through multiple methods, to reach those U.S.-based Group 1 Defendants named as Defendants herein to inquire about this matter. However, none of these Defendants has responded to Plaintiffs' communication efforts.

[4] Plaintiffs brought the 2020 Litigation against Doe Defendants operating 48 infringing websites. Plaintiffs learned in discovery that certain websites in the 2020 Litigation are operated by the same individuals who operate the Infringing Sites identified in the original Complaint in this case. Exhibit A reflects this information.

operating Infringing Sites that are active online and continue to sell Infringing eBooks to customers, again in blatant violation of Plaintiffs' copyrights.

### F.   The Group 2 Defendants - Defendants Li and Cao

97.    The Group 2 Defendants have sold Infringing eBooks through their Infringing Site acetxt.com. Plaintiffs have also identified in discovery at least four Associated Sites linked to the Group 2 Defendants, as listed on Exhibit A.

98.    In operating their infringing business, the Group 2 Defendants each participate in, exercise control over, and/or benefit from their infringing activities. They use names, aliases, email addresses, and/or financial accounts interchangeably to conduct and/or profit from their illegal business.

99.    The Group 2 Defendants have made concerted efforts to conceal their identities and contact information. For example, in dealing with Intermediaries and/or otherwise operating their infringing business, the Group 2 Defendants collectively have provided at least eight aliases, eight email addresses, and seven physical addresses across the United States, including in California, Michigan, and Texas, and abroad, including in China and Australia. Moreover, the Group 2 Defendants have used false addresses. For example, the Group 2 Defendants provided to payment processors an address of a wholly unrelated business and an address that does not appear to exist.

100.    Despite receiving notice of the TRO and PI, the Group 2 Defendants willfully continued to operate acetxt.com in violation of the Court's orders. Indeed, acetxt.com remained active and infringing until at least late January 2020.

G.     **Defendant McEvilley**

101.     Using the Shopify platform, Defendant McEvilley has sold Infringing eBooks through his Infringing Site bestbookz.myshopify.com. Plaintiffs have also identified in discovery at least ten Associated Sites linked to Defendant McEvilley, as listed on Exhibit A.

102.     Defendant McEvilley has made concerted efforts to conceal his identity and contact information. For example, in dealing with Intermediaries and/or otherwise operating his infringing business, Defendant McEvilley has provided at least 19 aliases, 25 email addresses, a physical address in Virginia (when he lives in California), and an alternate spelling of his last name, i.e., "MkEvilley."

103.     Despite receiving notice of the TRO and PI, Defendant McEvilley willfully continued his infringing business in violation of the Court's orders. In fact, he continued to sell Infringing eBooks through at least seven additional Infringing Sites that are identified in the 2020 Litigation.

104.     Through counsel, Defendant McEvilley originally contacted Plaintiffs about this case and/or the 2020 Litigation on March 26, 2020. However, since then, Defendant McEvilley has not produced a single document required pursuant to the Expedited Discovery Order.

H.     **Defendant Sobol**

105.     Defendant Sobol has sold infringing eBooks through his Infringing Site bookslite.com. Plaintiffs have also identified in discovery at least one Associated Site linked to Defendant Sobol, as listed on Exhibit A.

106.     Defendant Sobol has made concerted efforts to conceal his identity and contact information. For example, in dealing with Intermediaries and/or otherwise operating his

infringing business, he provided at least two different email addresses and yet another email address to Plaintiffs in connection with their purchase of an Infringing eBook from his Site. He used three physical addresses, one in the United States in Georgia, and also abroad, including in the Netherlands and the United Kingdom.

    **I.**    **Defendant Torresi**

    107.    Defendant Torresi has sold Infringing eBooks through his Infringing Site digittextbook.com, as well as the Associated Sites ebooksprime.com and ebooksnow.org, as listed on Exhibit A. Defendant Torresi has also sold Infringing eBooks through the Infringing Sites ebooks4class.com, ebooksforclass.com, and ebooksforcollege.com, as listed on Exhibit A.

    108.    Defendant Torresi knew that he was selling Infringing eBooks.  On July 26, 2019, Plaintiffs sent a notice of copyright infringement to Cloudflare related to a number of websites, including ebooks4class.com, ebooksforclass.com, and ebooksforcollege.com.   Cloudflare provided the notice of infringement to Defendant Torresi, who did not contact Plaintiffs in response. Moreover, Defendant Torresi responded by opening even more Infringing Sites.

    109.    Defendant Torresi has made concerted efforts to conceal his identity and contact information.  For example, in dealing with Intermediaries and/or otherwise operating his infringing business, he provided two physical addresses, in New York and Florida, that are not his true address in Miami, Florida and 12 different email addresses. Worse, Defendant Torresi actively sought out Plaintiffs to misrepresent his identity, location, and infringing activities. Beginning in November 2019, Defendant Torresi emailed Plaintiffs' counsel, represented that his name is "Farud," and stated that he is "based in Pakistan and [his] servers and websites were also based in other countries that US based copyright laws would not apply." He further wrote: "But out of respect for the courts and your firm, and also unsuspecting dummy accounts used to create

various services we have complied with your request and stopped all services related to said website and confirm we have no other websites or related products for sale anywhere else on the web." By referencing "dummy accounts," Defendant Torresi appears to have admitted that he uses false contact information to establish accounts with Intermediaries in order to conduct his infringing business.

110.    Following the above-described email, Defendant Torresi continued to lie to Plaintiffs, including by continuing to represent in emails into March 2020 that his name is Farud, he lives in Pakistan, and he had ceased operating Infringing Sites. For example, by email in December 2019, he stated that "[a]ll and any associated accounts related to the site have been closed, deleted, and ceased permanently." In fact, notwithstanding this representation to Plaintiffs, and despite his acknowledged awareness of the Court's injunctions in the TRO and PI, Defendant Torresi willfully continued to sell Infringing eBooks, including through the Infringing Site ebooksnow.org, which is identified in the 2020 Litigation.

111.    Ultimately, in March, 2020, Defendant Torresi retained counsel, and the true facts began to come to light. While Defendant Torresi has provided some of the information that he is required to provide pursuant to the Expedited Discovery Order, he has not provided all of it. Indeed, Defendant Torresi has not acknowledged the existence of the three Infringing Sites that were subject to the July 26, 2019 infringement notice.

**J.        The Group 3 Defendants - Defendants Anjum, Camacho, Akhter, and Ragon**

112.    The Group 3 Defendants have sold Infringing eBooks through their Infringing Site, duranbook.com. Plaintiffs have also identified in discovery at least eight Associated Sites linked to the Group 3 Defendants, as listed on Exhibit A.

113.    In operating their infringing business, the Group 3 Defendants each participate in, exercise control over, and/or benefit from their infringing activities. They use names, aliases, email addresses, and/or financial accounts interchangeably to conduct and/or profit from their illegal business.

114.    The Group 3 Defendants have made concerted efforts to conceal their identities and contact information. For example, in dealing with Intermediaries and/or otherwise operating their infringing business, they collectively have provided at least 11 aliases, seven email addresses, and fifteen physical addresses across the United States, including in California, Florida, Georgia, Illinois, New Hampshire, New York, and Oklahoma and abroad in Pakistan and the United Kingdom.

115.    Despite receiving notice of the TRO and PI, the Group 3 Defendants willfully continued their infringing business in violation of the Court's orders. First, duranbook.com remained active and infringing until late January 2020. Then, the Group 3 Defendants changed the domain name to duranbooks.com, which is identified in the 2020 Litigation, and continued selling Infringing eBooks. And currently, as of early May 2020, duranbooks.com now redirects to duranbooks.net. With each iteration of the Infringing Site, the Group 3 Defendants have switched Intermediaries to continue their infringement and attempt to evade detection/enforcement efforts.

**K.    Defendant Hamdan**

116.    Defendant Hamdan has sold Infringing eBooks through his Infringing Site ebookhunters.com.

117.    Defendant Hamdan has made concerted efforts to conceal his identity and contact information. For example, in dealing with Intermediaries and/or otherwise operating his infringing business, Defendant Hamdan has provided at least two aliases, two email addresses, and one physical address in Malaysia.

## L.    The Group 4 Defendants - Defendants Long and Khuyen Nguyen

118.    The Group 4 Defendants have sold Infringing eBooks through their Infringing Sites elibcenter.com and elibclass.com. Plaintiffs have also identified in discovery at least two Associated Sites linked to the Group 4 Defendants, as listed on Exhibit A.

119.    In operating their infringing business, the Group 4 Defendants each participate in, exercise control over, and/or benefit from their infringing activities. They use names, aliases, email addresses, and/or financial accounts interchangeably to conduct and/or profit from their illegal business.

120.    The Group 4 Defendants have made concerted efforts to conceal their identities and contact information. For example, in dealing with Intermediaries and/or otherwise operating their infringing business, the Group 4 Defendants collectively have provided at least five aliases, four email addresses, and four physical addresses in the United States, including California, Pennsylvania, and Texas, and abroad in Vietnam. Moreover, the Group 4 Defendants have used false addresses. For example, on the Infringing Site elibcenter.com, the Group 4 Defendants indicated a false address in Frisco, Texas, which does not appear to exist.

121.    Based on the currency associated with their financial accounts, it appears that the Group 4 Defendants operate out of Vietnam. Discovery is ongoing regarding whether the Group 4 Defendants are related to the Group 1 Defendants.

**M.**   **The Group 5 Defendants - Defendants Demeterova, Zhuravskiy, Demeter, and Haider**

122.   The Group 5 Defendants have sold Infringing eBooks through their Infringing Sites instant-reading.com and megatext4u.com. Plaintiffs have also identified in discovery at least 19 Associated Sites linked to the Group 5 Defendants, as listed on Exhibit A.

123.   In operating their infringing business, the Group 5 Defendants each participate in, exercise control over, and/or benefit from their infringing activities. They use names, aliases, email addresses, and/or financial accounts interchangeably to conduct and/or profit from their illegal business.

124.   The Group 5 Defendants have made concerted efforts to conceal their identities and contact information. For example, in dealing with Intermediaries and/or otherwise operating their infringing business, they collectively have provided seven aliases, seven email addresses, and five physical addresses in New York and abroad in the United Kingdom.

125.   Despite receiving notice of the TRO and PI, the Group 5 Defendants willfully continued their infringing business in violation of the Court's orders, including through duplanaca.com, which is identified in the 2020 Litigation, and at least two additional Associated Sites, kidicarez.com and digitaletxt.com, which, as of this filing, are currently active and infringing.

**N.**   **The Group 6 Defendants - Defendants Rodriguez and Melendez**

126.   The Group 6 Defendants have sold Infringing eBooks through their Infringing Site, pantherebook.com. Plaintiffs have also identified in discovery at least two Associated Sites linked to the Group 6 Defendants, as listed on Exhibit A.

127.    In operating their infringing business, the Group 6 Defendants each participate in, exercise control over, and/or benefit from their infringing activities. They use names, aliases, email addresses, and/or financial accounts interchangeably to conduct and/or profit from their illegal business.

128.    The Group 6 Defendants have made concerted efforts to conceal their identities and contact information. For example, in dealing with Intermediaries and/or otherwise operating their infringing business, they collectively have provided an alias, six email addresses, and four physical addresses in Florida and Georgia.

129.    Despite receiving notice of the TRO and PI, the Group 6 Defendants have willfully continued their infringing business in violation of the Court's orders, including through the active Sites discussed above in paragraph 89.

**<u>FIRST CLAIM FOR RELIEF</u>**

**Copyright Infringement (17 U.S.C. § 101 *et seq.*)**

130.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

131.    Plaintiffs' Authentic Works listed on Exhibit C constitute original works and copyrightable subject matter pursuant to the Copyright Act and are the subject of United States Certificates of Copyright Registration duly obtained from the United States Copyright Office. At all relevant times, Plaintiffs have been and still are the owners or exclusive licensees of all rights, title, and interest in and to their respective copyrights in such works, which have never been assigned, licensed, or otherwise transferred to Defendants.

132.    Beginning on an unknown date, Defendants, without the permission of Plaintiffs, have reproduced the Authentic Works and distributed (and continue to distribute) to the public

unauthorized copies of the Authentic Works. Such reproduction and distribution constitute infringement of Plaintiffs' exclusive rights under copyright pursuant to 17 U.S.C. § 501 in violation of 17 U.S.C. §§ 106(1) and 106(3).

133.   The infringement of Plaintiffs' rights in each of their respective copyrighted works constitutes a separate and distinct act of infringement.

134.   Defendants' unlawful conduct, as set forth above, was willful. Defendants had actual and/or constructive knowledge that their conduct was unlawful and in violation of Plaintiffs' copyrights. Defendants acted intentionally and in reckless disregard of Plaintiffs' copyrights.

135.   As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

136.   Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

### PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.   Judgment on the claim set forth above, including that Defendants' infringement of Plaintiffs' Authentic Works was intentional and willful.

2.   Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

3.      An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Infringing eBooks with documents relating to all such purchases and sales;

4.      An order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

5.      An order enjoining Defendants and those in active concert with them from further infringing upon Plaintiffs' respective copyrights pursuant to 17 U.S.C. § 502;

6.      An order requiring Defendants to deliver up for destruction all infringing copies and other material bearing imitations, including confusingly similar variations, of Plaintiffs' Authentic Works pursuant to 17 U.S.C. § 503;

7.      An order seizing the domain names associated with Defendants' Infringing Sites and turning them over to Plaintiffs;

8.      Prejudgment and post-judgment interest at the applicable rate;

9.      Plaintiffs' attorney's fees, expenses, and costs of suit; and

10.      Such other and further relief the Court deems proper.

## JURY TRIAL DEMAND

Plaintiffs hereby request a trial by jury.

Dated: May 21, 2020

Respectfully submitted,

By:  */s/ Matthew I. Fleischman*

Matthew J. Oppenheim
Michele H. Murphy (*pro hac vice*)
Matthew I. Fleischman
Vivian E. Kim

OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave, NW
Fifth Floor
Washington, D.C. 10016
(202) 480-2999
matt@oandzlaw.com
michele@oandzlaw.com
fleischman@oandzlaw.com
vivian@oandzlaw.com